**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FARD A.R. DICKERSON                                    CIVIL ACTION

VERSUS                                                        NUMBER:  14-1247

NATHAN B. CAIN, II, WARDEN                        SECTION: "F"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

I. *Factual and Procedural History*

Petitioner, Fard Dickerson, is a state prisoner incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.  On May 9, 2011, Dickerson was charged by bill of information with simple burglary pursuant to Louisiana Revised Statute 14:62.[1]

The following facts adduced at trial were set forth by the Louisiana Fourth Circuit on

---

[1] State Rec., Vol. 1 of 4, Bill of Information.  Co-defendant, Earl Hulitt, who is not a party to these proceedings, was similarly charged.  On August 10, 2012, he pleaded guilty and received a suspended sentence of two years active probation.

direct appeal:

> [T]he record indicates that at 10:30 a.m. on February 2, 2011, NOPD Officer Angel Wilson was dispatched to 4023 Loyola Avenue relative to a call of simple burglary. When she entered the residence, Defendant was being detained at gunpoint by the Moore brothers, the residence owner's nephews. Officer Wilson secured the Moores' weapon and learned that the brothers had gone to the location to inspect recent renovation of the premises and found Defendant inside the house. She stated that Defendant told her that he had been out of work for a while and needed money, whereupon the officer placed Defendant in her patrol unit. Shortly after, the owner of the property arrived and toured the premises with Officer Williams. They noted that holes had been punched in the walls and that copper wiring had been pulled from the walls. They also observed a black backpack containing copper wiring on the floor of the residence.
>
> Troy Moore recalled that he received a call from his brother, Clifton Moore, on February 10, 2011. Clifton had stopped at the house to inspect the status of the renovation of their aunt's Loyola Avenue residence. Troy met Clifton at the Loyola Avenue residence and determined that some unauthorized person was in the house.[2]  The brothers gained entrance via the front door key. Troy gave Clifton, a commissioned officer, a gun, and the brothers proceeded to search the premises room by room. They found holes in the wall from which the copper wiring had been removed. They also noted that some walls had been torn open and back doors kicked open. Troy said he and his brother discovered Defendant walking up the stairs of the apartment and apprehended him. Clifton reported the incident to the police. The police searched the house and discovered Earl Hulitt in the attic. Troy verified that the last time he inspected the house, the walls were intact, and the work had been inspected by the city as 80 to 90% complete. Troy verified that neither Defendant nor Hulitt was authorized to be in the residence. Troy also identified Defendant in court as the man he found in his aunt's property.
>
> Captain Clifton Moore of the New Orleans Fire Department corroborated his brother's testimony. He explained that on February 10, 2011, during one of his

---

[2] Troy Moore had called his aunt and learned that no one was supposed to be in the house.  (footnote in original)

usual visits to his aunt's property, he noticed a figure walking inside the house. He telephoned Troy, who arrived with a key to the front door. The armed brothers entered the residence, and as they progressed through the residence, they noticed damage to the walls. They also came upon Defendant ascending a flight of stairs. Clifton ordered Defendant to come downstairs so that Clifton could frisk him for weapons. The frisk turned up a screw driver and Defendant's wallet and identification. Clifton remembered that Troy made the 911 call to the police. When the police arrived Clifton inspected the residence and found that the copper wiring in the walls had been pulled out. Finally, Captain Moore made an in-court identification of Defendant as the man he discovered in the Loyola Avenue property.

Ms. Linda Villavoso, the owner of 4023 Loyola Avenue, went to her property every day to monitor the reconstruction progress. At the time of her February 9, 2011, visit the construction work was almost finished—the sheetrock was hung; wires were installed in the walls; and the interior had been painted. By the time she arrived at the Loyola Avenue address on February 10, 2011, two suspects were in police custody. In the house she noted holes in the walls, doors knocked down, wiring ripped from the walls, a backpack and a bucket full of copper wiring. The property did not have the damages she noted on the day prior to the burglary. No one was supposed to be at the residence the day the defendants were apprehended there. Ms. Villavaso said that she did not know the defendants and did not give them permission to enter her property.[3]

On August 21, 2012, after a two-day jury trial, the jury returned a responsive verdict of guilty of attempted simple burglary.[4]   On September 7, 2012, the trial court denied his motions for a new trial and for post-verdict judgment of acquittal and sentenced him to six years imprisonment along with an order for payment of restitution.[5]  The State filed a multiple

_____

[3] *State v. Dickerson*, 2013-0209, 2014 WL 1329873, at * 1-2 (La. App. 4th Cir. 4/2/14).

[4] State Rec., Vol. 1 of 4, Minute Entry of August 21, 2012.

[5] *Id.*, Minute Entry of September 7, 2012; see also State Rec., Vol. 2 of 4, Sentencing Transcript, p. 12.

3

offender bill of information charging him as a second felony offender.[6]  On October 29, 2012, Dickerson pleaded guilty to the multiple bill.[7]  The trial court vacated the original sentence and resentenced him to twelve (12) years imprisonment as a second felony offender pursuant to the plea agreement.[8]  Defense counsel moved for reconsideration of the sentence, which was denied.[9]

Thereafter, on or about December 9, 2012, Dickerson filed several motions:  a *pro se* motion to reconsider sentence, motion to amend his sentence and a motion to withdraw his guilty plea.[10]  The trial court denied these motions by written Judgment on December 17, 2012.[11]  On December 20, 2012, he filed a *pro se* motion to disqualify the trial judge for prejudice.  On December 31, 2012, he filed a *pro se* pleading styled, "Motion to Quash the

---

[6] State Rec., Vol. 1 of 4, Multiple Bill of Information.

[7] *Id.*, Waiver of Constitutional Rights Plea of Guilty Multiple Offender Pursuant to La. R.S. 15:529.1, executed on October 29, 2012.

[8] State Rec., Vol. 2 of 4, Transcript of Guilty Plea to Multiple Bill of Information (October 29, 2012).

[9] State Rec., Vol. 1 of 4, Motion to Reconsider Sentence and Order denying as moot dated October 29, 2012.

[10] *Id.*, Motion to Reconsider Sentence, Motion to Amend Sentence and Motion to Withdraw Plea of Guilty signed December 9, 2012.

[11] *Id.*, District Court Judgment signed December 17, 2012.

Habitual Offender Bill of Information and a Notice of Appeal."[12]  He again sought to withdraw

his guilty plea, alleging it was involuntary and coerced.  The trial court denied the motions by

written Judgment signed on January 7, 2013.[13]    On January 13, 2013, Dickerson filed

numerous additional *pro se* motions:  Motion for Reduction of Fine, Motion to Correct Illegal

Sentence, Demand by Accused for Trial, Motion for Acquittal, Subpoena Duces Tecum, Petition

for the Great Writ of Habeas Corpus, Motion to Proceed in Forma Pauperis, Response and

Objection to Habitual Offender Bill of Information, and Motion for Clerk to Provide Defense

Counsel with Trial Transcripts.  The trial court denied these motions by written Judgment

signed February 3, 2013.[14]

Dickerson appealed to the Louisiana Fourth Circuit Court of Appeal.[15]  His appointed

counsel asserted two claims for relief:  (1) he was denied the right under state law to

---

[12] *Id.*, Motion to Disqualify for Prejudice and Motion to Quash the Habitual Offender Bill of Information and Notice of Appeal.

[13] *Id.*, District Court Judgment signed January 7, 2013.

[14] *Id.*, Motions and District Court Judgment signed February 6, 2013; see also Minute Entry dated February 7, 2013.

[15] He continued to file *pro se* motions in the state trial court during the time his case was pending on direct appeal.  On or about February 26, 2013, he filed another motion to correct illegal sentence, a motion to withdraw guilty plea, a motion for habitual offender hearing transcripts and a motion and order for *Boykin* transcripts, all of which were denied by written Judgment. State Rec., Vol. 1 of 4, Minute Entry dated March 15, 2013.  The trial court subsequently also denied his "Petition 572.8" and motion for production of HFC transcript on October 18, 2013.  State Rec., Vol. 1 of 4, State District Court Judgment.

backstrike potential jurors based on race; and (2) prosecutors exercised peremptory challenges based on race.  Dickerson, in a supplemental *pro se* brief, raised five additional grounds, enumerated as follows: (3) he was denied a fair trial; (4) the trial court erred in denying his motion to suppress his statement based on Officer Wilson's perjured testimony; (5) he was denied the right under state law to a hearing to determine appointment of counsel within 72 hours of arrest; (6) he was not allowed to examine the evidence at the habitual offender hearing and the trial judge forced him to plead guilty to the habitual offender bill by threatening him with life imprisonment; and (7) he was erroneously billed as a multiple offender.[16]  The court of appeal affirmed his conviction on April 2, 2014.[17]  On or about April 30, 2014, he filed an application for writ of certiorari with the Louisiana Supreme Court in which he reurged the *pro se* claims included in his supplemental brief to the intermediate appellate court.[18]  On or about June 20, 2014, he filed a supplement to his writ application with

---

[16] Dickerson designated only five issues in his supplemental brief on appeal.  As the State notes, his brief included a single three-page handwritten generalized narrative entitled, "Argument" in support of those claims for relief.  The narrative lacks any differentiation between the claims asserted and arguably goes beyond the scope of the claims specifically enumerated.  The State's response sets forth all claims arguably asserted by Dickerson, even though these additional grounds were not acknowledged or considered as issues on appeal by the state appellate court.  State Rec., Vol. 2 of 4, Supplemental Brief; see also State Rec., Vol. 4 of 4, *State v. Dickerson*, 2013-KA-0209 (La. App. 4th Cir. Apr. 2, 2014) (unpublished).

[17] State Rec., Vol. 4 of 4, *State v. Dickerson*, 2013-KA-0209, 2014 WL 1329873 (La. App. 4th Cir. Apr. 2, 2014).

[18] *Id*., Louisiana Supreme Court Application for Supervisory Writ of Review, No. 14-KO-0908.

additional claims and argument.[19]  These claims included:  (1) he was denied a speedy trial by

the State's delay in instituting prosecution; (2) he was denied a fair trial because the court

allowed Officer Wilson's perjured testimony; (3) he was denied the right to effective assistance

of counsel because his trial attorney omitted the perjury argument in post-verdict motions;

(4) the trial court erred in accepting his involuntary guilty plea that was coerced by the State's

threat to bill him as a fourth felony offender; and (5) the multiple bill was defective based on

an erroneous predicate conviction.  The Louisiana Supreme Court denied relief on November

4, 2014.[20]

     While his Louisiana Supreme Court writ application was still pending, Dickerson

submitted his federal application for *habeas corpus* relief.[21]  In his original petition and a

supplemental memorandum (Rec. Doc. 19), he sets forth the following asserted grounds for

relief:

---

     [19] *Id.*, Motion to Supplement the Record.

     [20] *State v. Dickerson*, 2014-KO-0908 (La. 11/4/14), 152 So.3d 875.

     [21] Rec. Doc. 1, 11.  Petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254. "A
prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for
mailing to the district court."  *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).
Dickerson's application bears a signature date of August 13, 2013.  The application was
accepted for filing by this Court without the required application to proceed *in forma pauperis*
or filing fee on or about August 15, 2013.  The matter remained dormant for about 10 months.
Upon submission of the required documentation, he was eventually allowed to proceed *in
forma pauperis* about one year later on July 30, 2014.  Several months thereafter, the state
direct appeal proceedings concluded.

(1)     Officer Wilson perjured herself during the suppression hearing and lied about reading him *Miranda* rights;

(2)     He was denied his right under state law to a hearing for appointment of counsel within 72 hours of arrest;

(3)     He was adjudicated as an habitual offender based on an invalid predicate conviction and was coerced into pleading guilty to the multiple offender bill;

(4)     He was not advised of his rights relating to the habitual offender proceeding;

(5)     His right to a speedy trial was violated by the State's delay in instituting prosecution;

(6)     The State offered perjured testimony by Officer Wilson at trial;

(7)     Defense counsel was ineffective in failing to assert Officer Wilson's perjury in support of the motions for new trial and post-verdict judgment of acquittal;

(8)     The trial court erred in accepting his involuntary guilty plea; and

(9)     The multiple bill of information was defective because it listed an erroneous predicate offense.

The State filed a response in opposition conceding that the petition is timely, but asserting that several of the claims are procedurally defaulted because they are unexhausted,

and that the petition may be dismissed on the merits regardless.[22]  Dickerson filed a brief reply

to the State's response.[23]  The Court also liberally construed his pleading styled as a motion for

summary judgment as a further traverse to the State's response.[24]

## II. *Discussion*

Threshold questions in *habeas* review are whether the petition is timely and whether

the claims raised by the petitioner were adjudicated on the merits in state court (*i.e.*, the

petitioner must have exhausted state court remedies and must not be in "procedural default"

on a claim). *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir.1997) (citing 28 U.S.C. § 2254(b),

(c)).  The State asserts that four of Dickerson's nine claims are in procedural default because

they were not fully exhausted (*i.e.*, the State argues these claims were raised only in the

Louisiana Supreme Court and not fairly presented to the intermediate appellate court).[25]

Admittedly, the narrative presentation format of Dickerson's claims in both the state and

---

[22] Rec. Doc. 28, pp. 8-13.

[23] Rec. Doc. 32, Response/Objection Brief to the State's Answer.

[24] Rec. Docs. 41, 43 (Motion for Summary Judgment and related Order entered June 17, 2015).  The Court notes that Dickerson submitted additional attachments/exhibits in support of his federal *habeas* petition for this Court's consideration.  *See* Rec. Docs. 36, 37 (Motion to Amend/Correct Petition and related Order entered March 11, 2015); Rec. Docs. 45, 49 (Motion for Leave to Enter Newly Discovered Evidence and for Immediate Release and related Order entered December 3, 2015).  The Court has reviewed and considered all of this material.

[25] The Court limits its review of exhaustion to the State's argument with respect to these four claims for relief (Nos. 1, 5, 7 and 9), as Dickerson has now completed one round of review proceedings in the state courts.

federal pleadings makes it difficult to resolve exactly which arguments are, in fact, fully exhausted. Nevertheless, because the Court finds the claims to be without merit, any failure to exhaust does not prohibit this Court from addressing Dickerson's claims. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Court will therefore proceed to a merits review as permitted and warranted in the interests of judicial economy.

A. *General Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a

10

State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from that precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court

precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. at 102; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

Where the state court does not reach the merits of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA.... Instead, the claim is reviewed *de novo*." *Cone v. Bell*, 556 U.S. 449, 472 (2009) (citing *Rompilla v. Beard*, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (*de novo* review where state courts did not reach prejudice prong under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (same).

B. *Petitioner's Claims for Relief*

(1) *Denial of motion to suppress statement*

Dickerson asserts that the trial court improperly denied the motion to suppress his statement in light of Officer Wilson's perjured testimony that she mirandized him.  He maintains he was not advised of his *Miranda* rights and claims that the officer lied at the suppression hearing with respect to "reading him his *Miranda* rights."  The factual basis for the claim is somewhat ambiguous, as noted by the State. In his state court briefs on direct appeal, he did not argue specifically that the officer failed to advise him of his *Miranda* rights. Rather, he asserted that the officer lied with respect to him acknowledging that he understood those rights.  This coincides with counsel's argument to the trial court at the suppression hearing that Dickerson's mere nod of his head without a verbal response did not suffice to acknowledge he understood and waived those rights.  In his federal application, however, he contends he did not receive *Miranda* warnings and that the police officer falsely testified otherwise.  Nonetheless, regardless of whether Dickerson contends the officer lied about reading him these rights or about him acknowledging he understood these rights, the claim fails.

In denying the motion to suppress Dickerson's statement, the trial court rejected the defense's argument that his statement was made without sufficient acknowledgment or understanding of his *Miranda* rights and a valid waiver.  On appeal, Dickerson claimed the trial court erred in denying the motion to suppress his statement given Officer Wilson's perjured

13

testimony.  The Louisiana Fourth Circuit rejected the claim as follows:

> By this assignment Defendant maintains that the trial judge erred by denying his motion to suppress and finding probable cause based upon Officer Angel Wilson's "obviously" perjured testimony that Defendant nodded his head indicating that he understood his *Miranda* rights.
>
> As with his first *pro se* assignment, Defendant does not offer, and the record does not contain, any evidence that Officer Wilson perjured herself during the probable cause hearing. The record reveals that defense counsel thoroughly cross-examined Officer Wilson on the *Miranda* issue. Further, the defense did not offer any evidence to refute the officer's testimony on the issue. This assignment is meritless.

The Louisiana Supreme Court denied relief without additional reasons.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established procedural safeguards to protect the constitutional rights of an accused to be free from compelled self-interrogation during a custodial interrogation. Thus, before a person may be subjected to custodial interrogation by law enforcement personnel, he must be warned of his right to remain silent, that any statement he does make may be used against him, and that he has the right to have counsel present during the custodial interrogation. *Id*. at 473.

The state court's decision in this case rejecting the suppression claim was not an unreasonable application of clearly established Supreme Court precedent.  The state court's implicit finding that Dickerson was advised of his *Miranda* rights prior to police questioning was not clearly wrong and is entitled to deference.  Officer Wilson's testimony established that she gave Dickerson verbal *Miranda* warnings on the scene and Dickerson agreed to speak to her.  At the hearing on the motion to suppress, Officer Wilson testified that when Dickerson

14

was placed in custody, she "*Mirandized* him in the back of [her] patrol unit" and then "proceeded to ask him what he was doing inside of the residence." She repeated the rights she explained to him at the scene. She testified that she asked Dickerson whether he understood those rights, and that he nodded in affirmation.[26] At trial, Officer Wilson testified consistently with her earlier testimony that she read Dickerson his *Miranda* rights in the patrol car before questioning him.[27] Dickerson's self-serving allegation that the officer's testimony was false is entirely unsupported. He has pointed to nothing in the record to suggest that Officer Wilson lied about reading him his *Miranda* rights.

After being fully advised of his *Miranda* rights by Officer Wilson, Dickerson gave a specific nonverbal response indicating that he understood those rights. In his federal application, Dickerson does not dispute the finding based on the evidence that he understood these rights. Nor does the mere fact that he did not verbally respond to the officer's waiver question mean that he did not understand his rights. Furthermore, by answering the questions posed by the officer, he engaged in conduct implying waiver of those rights. *See Berghuis v. Thompson*, 560 U.S. 370, 385 (2010) ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights

---

[26] Rec. Doc., 3 of 4, Transcript of suppression hearing, pp. 6-7.

[27] State Rec., Vol. 2 of 4, Trial Transcript (Officer Angel Wilson), pp. 18-19.

afford."). The record supports a finding, consistent with the officer's testimony, that Dickerson was properly advised of his *Miranda* rights and that he understood and voluntarily waived those rights before he made the inculpatory statement.

Dickerson also suggests that his statement should have been suppressed because the officer failed to advise him of the reason for his detention in violation of state law, Louisiana Code of Criminal Procedure article 218.1. Insofar as this particular claim rests on the proper interpretation and application of state jurisprudence and rules of procedure, however, he does not present a cognizable federal constitutional claim. Federal *habeas corpus* relief may be granted only to remedy violations of the federal constitution and the laws of the United States. 28 U.S.C. § 2254(a); *Engle v. Isaac*, 456 U.S. 107, 119 (1983). Federal courts will not review a state court's interpretation of its own law in a federal *habeas corpus* proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir.1986).

Furthermore, the record in this case contradicts Dickerson's assertion that he was not informed of the reason for his arrest. According to the police narrative, Dickerson was advised he was being charged with simple burglary of a residence pursuant to Louisiana Revised Statute 14:62. Even assuming the police officer did not expressly inform him that he was being questioned in relation to burglary of the residence, the Supreme Court has recognized that mere silence as to the charges of an arrest is insufficient to invalidate a suspect's waiver of *Miranda* rights. *See Colorado v. Spring*, 479 U.S. 564, 576, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). Certainly, under the circumstances, Dickerson had reason to know why he was being

16

questioned.  Notwithstanding that the record indicates he <u>was</u> so informed, it was unnecessary for Officer Wilson to inform him of the reasons for his arrest, and the mere failure to do so does not render his waiver invalid.

Dickerson fails to demonstrate that the adjudication of his suppression claim was contrary to or involved an unreasonable application of clearly established federal law.  He is not entitled to relief on these grounds.

(2) *Denial of "72-hour appearance"*

Dickerson claims that he was denied his right to a hearing under state-law within seventy-two hours of his arrest for the purpose of appointing him counsel.  This state law claim was raised and rejected on direct appeal.

Louisiana law provides that a law enforcement officer having custody of an arrested person shall promptly bring him, "and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel." La. C.Cr.P. art. 230.1(A).  The remedy for noncompliance with the foregoing presentment requirement is release from custody.  La. C.Cr.P. art. 230.1(C).  The mandate to appoint counsel within 72 hours of arrest is a matter of Louisiana statutory law.  Even if Dickerson were able to establish a violation of Louisiana Code of Criminal Procedure article 230.1, however (a question the Court need not resolve here), he fails to state a cognizable claim for *habeas corpus* relief.  Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*,

17

456 U.S. at 119.  Accordingly, this claim fails.

(3) *Habitual offender adjudication and guilty plea*[28]

     In these related claims, Dickerson disputes the validity of his guilty plea and multiple offender adjudication as a second felony offender.  He asserts that he was unable to view the State's evidence that did not, in fact, support the multiple bill of information, which he claims was based on a "fictitious" or erroneous out-of-state predicate conviction.  He claims he was not advised of his rights relating to the multiple offender proceedings.  Finally, he contends the trial court erred in accepting his plea of guilty that was rendered involuntary because "[he] was threaten[ed] by 4 lawyers plus the D.A. assists [sic] to 12 years or life in prison" as a quadruple offender.[29]

     Dickerson challenged his guilty plea on direct appeal. The appellate court rejected the claim, stating as follows:

> In this assignment, Defendant complains that he was not allowed to examine the evidence at the multiple bill hearing, and that the trial judge forced him to accept a plea of twelve years by threatening him with life imprisonment.
>
> The record indicates that Defendant pled guilty to being a second offender and agreed to a twelve year sentence, in exchange for the State agreeing not to charge him as a quadruple offender. The trial judge questioned Defendant thoroughly as to his understanding of the plea deal and his level of education—one year of college. The judge advised Defendant of the rights he was waiving by pleading to the multiple bill, and Defendant acknowledged that

---

[28] This ground for relief encompasses Claims 3, 4, 8, and 9.

[29] Rec. Doc. 11, p. 3.

he wanted to plead guilty. Defendant verified that he had initialed the plea of guilty form in the appropriate areas, and that he was counseled by his attorney before entering the plea. The record contains no evidence that Defendant was threatened in any way to accept the plea. Nor is there any indication Defendant requested to examine the documents supporting the multiple bill or that he was denied the opportunity to view those documents. This assignment is meritless.

The Louisiana Supreme Court denied his related writ without additional reasons.

First, Dickerson argues that he could not properly be charged as a second felony offender based on the erroneous underlying predicate offense for which the State offered insufficient evidentiary proof. With respect to the multiple bill irregularities, Dickerson has not alleged an infringement of his rights or procedural irregularity in entering the predicate guilty plea. Instead, he challenges the State's ability to use the 2001 predicate conviction from South Carolina, and specifically to prove its sufficiency, to support the multiple bill in this case.[30] He submits that Louisiana law required the State to produce proof of the propriety of

---

[30] His federal application states: "I was multibilled as a 2nd offender in which I never had a conviction in this state. The conviction they multibill me is from Chas. S.C. over 10 years ago." Rec. Doc. 11, p. 4. Dickerson submits that his underlying predicate conviction was for "breaking into auto or tanks where fuel is stored," for which no similar felony criminal statute exists in Louisiana, rather than for what he terms a "fictitious" and "non-existent" South Carolina crime of *breaking into a motor vehicle*, as charged in the multiple bill of information. Rec. Doc. 32, p. 12. For the benefit of the reviewing court, the records he has submitted to this Court and to the United States Fifth Circuit Court of Appeals in connection with a mandamus application, of which the Court takes judicial notice, reflect that he was arrested and charged in January 2001 with "B&E auto" in violation of South Carolina Code/Ordinance section 16-13-160 (Rec. Doc. 41, Arrest Warrant).

Section 16-13-160 is entitled "Breaking into motor vehicles or tanks, pumps and other containers where fuel or lubricants are stored," and provides:

the prior conviction.  In proceedings where no guilty plea is entered to the multiple bill, the

State may be required to prove the existence of a prior felony conviction and that the

defendant is the same person who was convicted of the prior felony. *State v. Shelton*, 621 So.2d

769 (La.1993).  In this case, however, Dickerson entered a plea of guilty and admitted to the

allegations in the multiple bill. The United States Fifth Circuit has recognized that a state

criminal defendant waives a claim of sufficiency of the evidence by pleading guilty or admitting

to a multiple bill. *Payne v. Whitley*, 48 F.3d 529, 1995 WL 84049, at *2 (5th Cir. Feb. 6, 1995).

The Fifth Circuit has repeatedly recognized that a state court has no federal constitutional duty

to establish a factual basis for the guilty plea to a multiple bill, because the state judge is not

---

(A) It is unlawful for a person to:

    (1) break or attempt to break into a motor vehicle or its compartment with the intent to steal it or anything of value from it, or attached or annexed to it, or used in connection with it or in the perpetration of any criminal offense; *or*

    (2) break or attempt to break any tank, pump, or other vessel where kerosene, gasoline, or lubricating oil is stored or kept with intent to steal any such product.

(B)  A person who violates the provisions of this section is guilty of a felony and, upon conviction, must be imprisoned not more than five years or fined not more than one thousand dollars or both.

On December 3, 2001, he pleaded guilty as charged to breaking into a motor vehicle in violation of Section 16-13-160 and was sentenced to a term of five years imprisonment, with the balance suspended and probation upon the service of two years. *In Re: Fard Dickerson*, No. 15-30963 (5th Cir. 2015).

determining guilt or innocence, and instead is enhancing a sentence based on a prior conviction which the defendant deems true by admitting to the bill. *Payne*, 1995 WL 84049, at \*2. Here, Dickerson plainly has waived his right to challenge the sufficiency of the evidence to support the multiple bill.

Second, Dickerson argues only that the trial court failed to comply with the requirements of state law regarding advisement of rights.  Regardless of merit, however, that claim does not present a cognizable issue on federal review because, as previously stated, federal *habeas* relief is not available to correct an error of state law.  Furthermore, even if he had alleged the infringement of a federal right, such a claim would be meritless.  State multiple offender proceedings are not determinative of guilt or innocence, and they do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. *Buckley v. Butler*, 825 F.2d 895, 902–03 (5th Cir.1987). For this reason, advice of rights has "only a limited application to multiple offender proceedings." *Joseph v. Butler*, 838 F.2d 786, 790 (5th Cir.1988). As the Fifth Circuit has explained:

> [I]n connection with guilty, or "true," pleas under state recidivist statutes, this circuit does not require that the full panoply of rights enunciated in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), be extended to the defendant. *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir.), cert. denied, 488 U.S. 838, 109 S.Ct. 104, 102 L.Ed.2d 80 (1988). A guilty plea to an enhancement charge is valid if the " 'totality of the circumstances' in the record demonstrates that the plea was voluntary and intelligent." *Swift v. Lynn*, 870 F.2d 1039, 1041 (5th Cir.1989) (quoting *Holloway*, 838 F.2d at 793).

*Alexander v. Whitley*, 940 F.2d 946, 947 (5th Cir.1991); *Joseph*, 838 F.2d at 789–90; *Swift v.*

21

*Lynn*, 870 F.2d 1039, 1041–42 (5th Cir.1989).

Third, Dickerson's claim that his guilty plea was involuntary must be rejected.  The law is clear that a guilty plea must be both knowing and voluntary.  *Parke v. Raley*, 506 U.S. 20, 28 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709 (1969)).  For a multiple offender plea to be considered knowing, "the defendant must have 'a full understanding of what the plea connotes and of its consequence.' " *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir.2000) (quoting *Boykin*, 395 U.S. at 244).  "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir.1990); *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir.1996). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes. *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir.), cert. denied, 474 U.S. 838 (1985); *Hernandez*, 234 F.3d at 256–57 (with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).

A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.  When a *habeas* petitioner challenges the validity of his guilty plea, he carries the burden of proving

22

that his plea was not in fact knowing and voluntary. *See, e.g., Hines v. Louisiana*, 102 F.Supp.2d 690, 694 (E.D. La. 2000).

The totality of the circumstances in this case supports a finding that the plea was both knowing and voluntary. Dickerson does not contest that his plea was knowing and intelligent or that the record evidence supports such a finding. There is no evidence that he suffered from any physical or mental problems which would have impaired his ability to understand the proceedings or the nature of his plea. He was represented by legal counsel and conferred with counsel during the plea process. The trial court advised Dickerson of his rights and the fact that he would be giving up those rights by pleading guilty. He indicated that he understood the terms of the plea and that he wished to plead guilty. He received a significant benefit as to sentencing by entering the plea agreement.

As the sentencing transcript reflects, the prosecutor advised the court of the plea agreement to bill Dickerson only as a second felony offender, rather than "as a quadruple bill," with a recommended 12-year sentence.[31] Dickerson submits that this threat by the State to pursue the maximum enhanced sentence if he did not accept the offer of 12 years as a second felony offender rendered his decision involuntary, and he so informed the trial court by his affirmative response during the plea colloquy.[32] This contrasts with Dickerson's executed

---

[31] State Rec., Vol. 2 of 4, Transcript at pp. 3-4.

[32] *Id.*, Transcript at p. 13. As the State notes, several lines of transcribed testimony appear to be missing near the end of certain pages in the state court record and therefore no

guilty plea waiver form that bears his initials next to the admonishment: "I have not in any way been forced, coerced, or threatened to enter this plea of guilty."[33]  In any event, the fact that the State may have engaged in such conduct (*i.e.*, informing him of the potential for seeking a more severe enhanced sentence), does not constitute a threat or coercion that would render his plea legally involuntary.  Dickerson's argument that the State's threat in this regard somehow constituted unconstitutional coercion to plead guilty runs counter to well-established case law, which recognizes that it is constitutionally permissible to use the threat of more severe punishment to encourage a guilty plea.  *See Bordenkircher v. Haynes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (holding that it is not a violation of due process for a prosecutor to carry out a valid threat made during plea negotiations to have the accused reindicted on more serious charges on which he is plainly subject to prosecution if he does not plead guilty to the offense with which he was originally charged); *Frank v. Blackburn*, 646 F.2d at 883 (5th Cir.1980) (noting that the Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused) (citing *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Bordenkircher*,

---

explanation accompanies the response.  The trial court was satisfied and expressly found based on the exchange, however, that the plea was knowing, intelligent and voluntary.

[33] State Rec. Vol. 1 of 4, Waiver of Constitutional Rights Plea of Guilty Multiple Offender Pursuant to La. R.S. 15:529.1, executed on October 29, 2012.

*supra.*

In the instant case, the State could have charged Dickerson as a fourth felony offender under Louisiana law.[34]  Under that scenario, Dickerson would have faced the likelihood of a significantly more severe sentence, one that included the possibility of life imprisonment.  The State's assertion that it could file an habitual offender bill charging Dickerson as a fourth felony offender was part and parcel of permissible plea bargain negotiations, and did not render Dickerson's acceptance of the State's plea offer involuntary.

The evidence presented supports a finding that Dickerson's guilty plea, entered with the assistance of counsel, was intelligent, knowing and voluntary.  Accordingly, for the reasons expressed, Dickerson is not entitled to federal *habeas* relief on these claims.

(4) *Denial of the right to a speedy trial*

Dickerson claims that he was denied his right to a speedy trial because the State did not institute prosecution in a timely manner.  To the extent Dickerson's claim for relief alleges a violation of state law under Louisiana Code of Criminal Procedure article 701, not federal law, the claim is not cognizable in federal *habeas* review.  Even if he could show that the State failed to institute prosecution in a timely manner, the claim implicates no federal constitutional concerns.[35]  Federal *habeas corpus* relief is not available to correct errors of state law.  *See*

---

[34] Rec. doc. 48.

[35] Pursuant to Louisiana Code of Criminal Procedure article 701(B), the time period for filing a bill of information or indictment after arrest shall be as follows:

*Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (federal *habeas* review does not lie for errors of

state law); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

_____

(1)(a) When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed within forty-five days of the arrest if the defendant is being held for a misdemeanor and within sixty days of the arrest if the defendant is being held for a felony.

(b) When the defendant is continued in custody subsequent to an arrest, an indictment shall be filed within one hundred twenty days of the arrest if the defendant is being held for a felony for which the punishment may be death or life imprisonment.

(2) When the defendant is not continued in custody subsequent to arrest, an indictment or information shall be filed within ninety days of the arrest if the defendant is booked with a misdemeanor and one hundred fifty days of the arrest if the defendant is booked with a felony.

Failure to institute prosecution as provided in Subparagraph (1) shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. If just cause is shown, the court shall reconsider bail for the defendant. Failure to institute prosecution as provided in Subparagraph (2) shall result in the release of the bail obligation if, after contradictory hearing with the district attorney, just cause for the delay is not shown.

Article 701(B)(1)(a) grants only pretrial release in the event a bill of information is not filed for a felony within sixty days of arrest; it does not provide a basis for challenging the validity of a subsequent conviction. *See e.g.*, *State v. Gordon*, 896 So.2d 1053, 1062-63 (La. App. 1st Cir. 2004). Therefore, once a defendant has been convicted, any violation of Article 701 is rendered moot. *Davis v. Ducote*, Civ. Action 13-3210, 2014 WL 931433, at *7 (E.D. La. Mar. 10, 2014). Thus, as this Court has previously found, the provision does not give rise to any constitutionally protected liberty interest in having the charges against an individual automatically quashed or dismissed merely because he was not indicted or charged by bill of information within sixty days of his arrest. *Davis*, 2014 WL 931433, at * 9.

26

Even broadly construing the pleadings and assuming Dickerson asserts that he was denied his Sixth Amendment right to a speedy trial, his claim fails.  In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), the Supreme Court set out a four-factor balancing test, which considers:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant resulting from the delay.  With respect to these balancing factors, the United States Supreme Court has explained:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker*, 407 U.S. at 533 (footnote omitted).

Initially, the Court notes that Dickerson argues only that the State failed to file a bill of information against him within the 60-day delay provided by Louisiana law, and cites nothing to support any of the balancing factors, much less demonstrate undue delay in bringing him to trial in violation of his federal right to a speedy trial.  Moreover, based on the record in this case and application of the relevant factors, it is clear no speedy trial violation occurred.

Dickerson was arrested on February 10, 2011.[36]  The State filed a bill of information on May 9, 2011.[37]  Dickerson filed a motion for speedy trial on or about June 13, 2011.  In July 2011, defense counsel filed a motion to continue.  In August 2011, a joint motion to continue was filed.  On October 31, 2011, a preliminary examination and suppression hearing was held. Defense counsel informed the court that he would adopt Dickerson's *pro se* filed speedy trial motion.  Trial was set for January 10, 2012.  On November 9, 2011, Dickerson filed a motion for appointment of new counsel.  On January 10, 2012, Dickerson informed the court that he had retained private counsel.  Trial was reset for February 29, 2012.  When Dickerson failed to appear on this date, the trial court granted the State's motion for bond forfeiture and issued an *alias capias* for his arrest with no bond.  The matter was continued without date. On March 22, 2012, defense counsel filed a motion to withdraw.  On May 2, 2012, Dickerson was arrested.  A hearing to determine counsel was set.  On May 16, 2012, Dickerson appeared in court with new defense counsel, Anna Fecker, who filed a notice of enrollment on June 12, 2012. Trial was scheduled for June 27, 2012.  On June 25, 2012, Dickerson filed a motion to quash the bill of information based on the State's delay in instituting prosecution.  The trial

---

[36] State Rec., Vol. 1 of 4, Docket Master.

[37] Separate docket masters appear in the state court record related to Dickerson's simple burglary charge. State Rec., Vol. 1 of 4.  These bear case number 505-066 "F" and case number 505-789 "F."  The initial case number reflects a bill of information filed on April 12, 2011.  The docket master shows that file number 505-789 was transferred to section "F" to follow case number 505-066, and the State subsequently entered a *nolle prosequi* in 505-066 on June 16, 2011.

court subsequently denied the motion to quash on July 24, 2012.  Defense counsel moved for

a continuance of trial set for June 27, 2012.  The motion was granted and trial was continued

to August 20, 2012.  Trial commenced on August 20 and 21, 2012.

Even if the court assumes the 18-month delay in this case crosses a threshold level

regarded as presumptively prejudicial,  *see United States v. Lucien*, 61 F.3d 366, 371 (5th

Cir.1995), application of the balancing factors fails to establish a deprivation of the right to a

speedy trial.  First, the delay in this case is not of a magnitude normally considered unusually

long. *See Laws v. Stephens*, 536 Fed. App'x 409, 414 n. 7 (5th Cir.2013) (collecting cases), *cert.

denied*, 134 S.Ct. 2133, 188 L.Ed.2d 1127 (2014). As the United States Fifth Circuit Court of

Appeals explained: "The bare minimum required to trigger a *Barker* analysis is one year.  A

delay must persist for at least eighteen months over and above that bare minimum for this

factor to strongly favor the accused." *Amos v. Thornton*, 646 F.3d 199, 206–07 (5th Cir.2011)

(footnote omitted).  Second, the delay cannot be attributed to the State, and certainly there is

no evidence that any such delay, even if attributable to the State, was motivated by a desire to

hamper the defense.  Third, while Dickerson may have asserted his right to a speedy trial, he

also plainly contributed significantly to the delay in the proceedings given the request for

different counsel and multiple defense requests for continuances.  Fourth, he fails to show he

was substantially prejudiced by the delay.  Accordingly, Dickerson fails to demonstrate a

violation of his federal speedy trial rights.  He is not entitled to federal *habeas* relief on this

claim.

29

(5) *Perjured testimony at trial*

Dickerson asserts he was denied due process because Officer Wilson offered perjured testimony at trial.  He implies that the officer lied in her police narrative regarding the statements Dickerson allegedly made to her on the scene.[38]  Specifically, he points to inconsistencies between the officer's testimony at trial and her testimony at the suppression hearing.

At trial, Officer Wilson testified consistent with the police narrative that Dickerson told her at the scene that he had broken into the victim's residence in order to steal copper wiring.[39]  However, Dickerson correctly points out that at his preliminary examination/suppression hearing 10 months earlier, the officer testified to the contrary that Dickerson told her he had broken into the residence because he "had been out of work for a few months and he needed some money," and that "he didn't specifically say to commit the crime."[40]

---

[38] The narrative report details that during Officer Wilson's interview with Dickerson he stated, "[t]hat he had been out of work for a few months... and that he and Mr. Hulitt broke into the residence to take the copper from the home."  State Rec., Vol. 2 of 4 (police narrative included as exhibit to *pro se* supplemental appellate brief).

[39] State Rec., Vol. 2 of 4, Trial Transcript, p. 9.

[40] State Rec., Vol. 3 of 4, Motion Transcript, p. 7.

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269–70, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). In order to establish a due process violation based on the knowing use of perjury, a *habeas* petitioner must demonstrate that (1) the testimony was actually false, (2) the falsity was material in that there was a reasonable likelihood that it affected the judgment of the jury, and (3) the prosecution used the testimony in question knowing that it was false. *Giglio v. United States*, 405 U.S. at 153–54; *Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir.2014).

Dickerson has not established the foregoing factors.  Most importantly, Dickerson has not established that the officer's testimony was, in fact, false, or that the prosecution knew it was false.  The record evidence shows only inconsistencies between the witness' testimony given at an earlier hearing and that given at trial. *See generally Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir.2002) (perjured testimony not established simply where testimony is inconsistent with prior statements). A mere discrepancy in her recalling the precise statement made by Dickerson does not prove that Officer Wilson's testimony was false. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (contradictory testimony merely establishes a credibility question for the trier of fact, and does not suffice to establish that testimony was perjured) (citing *Little v. Butler*, 848 F.2d 73, 76 (5th Cir.1988)).

Furthermore, defense counsel fully explored the discrepancy in the officer's testimony on cross-examination.  In an attempt to impeach the witness, the defense called her attention to her previous sworn affirmation during the preliminary examination hearing that Dickerson had not made any statement regarding stealing copper wire.[41]  As such, the conflicting testimony presented nothing more than a routine credibility issue for the jury to afford the appropriate weight to the testimony. The State was not required to correct the inconsistency that may have resulted from the officer's faulty memory.  Nor did the failure to do so deny Dickerson due process under the circumstances. For the foregoing reasons, the Court finds that Dickerson is not entitled to *habeas* relief on this claim.

(6) *Ineffective assistance of counsel*

Dickerson asserts that trial counsel provided ineffective assistance by not raising Officer Wilson's alleged perjury as grounds for a new trial or post-verdict motion of acquittal.

A petitioner demonstrates ineffective assistance of counsel when he shows both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove deficient performance, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *Id.*; *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."

_____

[41] Rec. Doc.,Vol. 2 of 4, Trial Transcript, pp.18-22.

*Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998) (citing *Strickland*, 466 U.S. at 688). However, a petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986) (citing *Strickland*, 466 U.S. at 689; *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985)). Indeed, federal *habeas* courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *see also Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir.2008). In assessing counsel's performance, a federal *habeas* court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal v. Puckett*, 286 F.3d 230, 236–37 (5th Cir. 2002); *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir.2000), *cert. denied*, 531 U.S. 1167 (2001). Tactical and informed strategic decisions when supported by the circumstances may be considered objectively reasonable, and therefore do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.1999), *cert. denied*, 528 U.S. 1013 (1999) (citations omitted).

To demonstrate prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine

"the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d at 793.

Although Dickerson may disagree with counsel's decision not to advance the perjury claim in support of the post-verdict motions, the determination regarding how best to represent a client upon weighing the potential merit and success of the claim is entitled to wide latitude and deference from a *habeas* court on review. *See Yarborough v.Gentry*, 540 U.S. 1, 5-6 (2003); *Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007). Counsel for Dickerson exercised sound professional judgment in pursuing the post-verdict motions and strategically included a number of potentially meritorious issues in those motions.[42] Her decision not to include this particular claim fell within the wide range of reasonable professionally competent assistance. Counsel is not required to raise every single issue advanced by a client. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of rigorous and effective advocacy...."). Nor does counsel perform deficiently by failing to pursue an argument that in her professional judgment has little or no validity or hope of success. *See United States v. Gaudet*, 81 F.3d 585, 591 (5th Cir.1996). In this case, the perjury claim Dickerson asserts was unlikely to succeed, for the reasons previously expressed, whether raised in a motion for

---

[42] State Rec., Vol. 2 of 4 (Transcript of sentencing and hearing on post-verdict motions).

34

new trial or a motion for post-verdict judgment of acquittal.  Thus, he has not shown that he was prejudiced by the omission of that ground from the motions.  For this reason, Dickerson fails to establish that counsel performed deficiently or that he suffered any prejudice based on counsel's failure to urge a perjury claim in the post-verdict motions.   He is not entitled to federal *habeas* relief on this claim.

<u>**RECOMMENDATION**</u>

**IT IS RECOMMENDED** that Dickerson's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[43]

New Orleans, Louisiana, this ___4th___ day of ___December___, 2015.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[43] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

36